AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 1 3 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. **19MJ5063**
)
Black Samsung Galaxy S5 Cellular Phone )
IMEI: 355700060181316 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 | Alien Smuggling |

The application is based on these facts:

See attached Affadavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Border Patrol Agent-Intel David Trebbi
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/13/2019

City and state: San Diego, CA

_____
Judge's signature

Hon. Andrew G. Schopler, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED
Referred to as "**Target Device 1**" in the accompanying affidavit.

The property to be searched in connection with an investigation of violations of Title 8, United States Code Section 1324, is described below:

Black Samsung Galaxy S5
IMEI: 355700060181316
Case No. BRF2010000245
RE: Jose Armando TIPAN

Currently in the possession of the Department of Homeland Security, United States Border Patrol, Brown Field Station, located at 7560 Britannia Court, San Diego, CA 92154 (Evidence Vault).

## ATTACHMENT B

### ITEMS TO BE SEIZED
### From **Target Device 1**

*[Handwritten annotation: Application Attachment B (SEE MODIFICATIONS MADE TO SEARCH WARRANT ATTACHMENT B) AGS]*

The following evidence to be searched for and seized pertains to violations of Title 8, United States Code, Section 1324:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling illegal aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States;

    d. tending to identify travel to or presence at locations involved in smuggling undocumented aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

# AFFIDAVIT

I, Border Patrol Agent-Intel David Trebbi, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices (collectively, "**Target Devices**"):

   (1) Black Samsung Galaxy S5 Cellular Phone; IMEI: 355700060181316 ("**Target Device 1**");

   (2) Black Samsung Galaxy S5 Cellular Phone; IMEI: 355720104772524 ("**Target Device 2**");

   (3) Black Samsung Galaxy S10 Cellular Phone; IMEI: 352334103726383 ("**Target Device 3**");

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324, as further described in Attachment B.

2. It is believed that **Target Devices** were used by TIPAN to communicate with co-conspirators during an alien smuggling event involving two illegal aliens in the Southern District of California, more specifically, Jamul, California. The **Target Devices** are currently in the possession of the Department of Homeland Security, United States Border Patrol, Brown Field Station, located at 7560 Britannia Court, San Diego, CA 92154 (Evidence Vault)

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been a Border Patrol Agent ("BPA") with the United States Border Patrol ("USBP") since October 11, 2010. I graduated from the USBP Basic Border Patrol

1

Training Academy in 2011. The 19-week Academy curriculum provided me with specialized training in the Immigration and Naturalization Act (INA), criminal law, and statutory authority, as well as cross-training in Title 21 of the United States Code (Controlled Substance Act ("CSA") violations) and Title 19 of the United States Code (Customs law violations). I have been trained in investigating various violations of federal law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk currency smuggling. I have also worked with and learned from other agents and criminal investigators with extensive experience in these investigations.

5. As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As an agent with the Border Patrol, my responsibilities include the investigation of violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

6. My first assignment with the USBP was as a uniformed Patrol Agent in the Campo Area of Responsibility ("AOR") from October 2010 through December 2012. Beginning in December 2012, I was assigned to the Campo Station Abatement Team ("CSAT"), where I conducted intelligence and targeted enforcement operations in the rural east San Diego County. My duties included investigating criminal alien smuggling organizations, criminal undocumented aliens (UDAs) that were present in the United States illegally, and criminal UDAs that returned illegally to the United States after deportation. During my time in CSAT, I regularly and routinely engaged in observation and surveillance of criminal alien smuggling organizations, apprehension of persons involved in alien smuggling, and in the preparation of criminal cases against such persons. I worked in CSAT until December 2015, when I was permanently assigned to the USBP San Diego Sector Intelligence Unit ("SIU"). SIU is tasked with investigating, arresting, and

prosecuting alien smuggling and human trafficking organizations that utilize the Southern District of California as an operational corridor.

7. As a BPA, I have become intimately familiar with the patterns and practices of alien smuggling organizations, including the smuggling, harboring, aiding, and transportation of illegal UDAs, as well as with the documents used to obtain entry for such UDAs, including illegally-obtained, counterfeit, altered, or stolen immigration documents. In the course of my duties, I have worked closely and extensively with Special Agents from HSI and DEA to target alien and narcotics smuggling organizations; presented complex criminal investigative findings to the United States Attorney's Office; prepared cases against persons involved in the smuggling of UDAs into the United States for prosecution; conducted multiple post-indictment/information interviews; participated in the drafting of affidavits for tracker warrants, search warrants, and arrest warrants; drafted comprehensive reports based upon multiple smuggling events and information that originated from multiple sources; and conducted in-depth telephone analysis.

8. Through the course of my career, through training, investigations, and conversations with other law enforcement personnel, I have become aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios, to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving alien smuggling. Drivers engaged in the smuggling of people across the border, or to the interior from the border, are in telephonic contact with co-conspirators immediately prior to, during and following the smuggling event. These communications typically consist of instructions on how/where to cross or pick up undocumented aliens, directions of travel, and locations for delivery to stash houses and/or sponsors. Alien smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the origination and destination phone numbers of calls placed to and from cellular and digital telephones.

9. I have arrested and interviewed numerous alien smugglers. Through these experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices employed by the drivers/smugglers locally and abroad, including transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement.

10. Based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the aliens while they are in transit.

    c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the aliens will arrive at predetermined locations.

    d. Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of the aliens.

    e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Alien smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport the aliens.

11. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to smuggle undocumented aliens from Mexico to the United States or smuggle undocumented aliens further into the interior of the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling illegal aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States;

d. tending to identify travel to or presence at locations involved in smuggling undocumented aliens from Mexico to the United States or smuggling undocumented aliens further into the interior of the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## FACTS SUPPORTING PROBABLE CAUSE

12. I, BPA David Trebbi, having read the probable cause statement authored by BPA Brendan Hurlbut and BPA Edwin Mendivil can attest that the following account is true and correct. This account of the circumstances surrounding the arrest of TIPAN and Eddie PEREZ-Pena ("PEREZ") for Title 8 United States Code 1324 (8 USC 1324; alien smuggling) was taken directly from the U.S. Department of Homeland Security Report Of Investigation Form: G166F (Refer to G166F # BRF2010000245).

13. According to the facts I have read, I understand that BPA's from the Brown Field Border Patrol Station and assigned to the Brown Field AOR were conducting immigration inspections at the State Route ("SR") 94 USBP Checkpoint located in Jamul, California. The SR 94 Checkpoint is located approximately seven miles north of the United States ("US") and Mexico ("MX") International Boundary, and approximately seven miles east of the Otay Mesa Port of Entry. All warning lights and signs were up and functional. All agents were in full rough duty uniform with all patches and insignias visible.

14. At approximately 7:00 A.M., on October 26, 2019, a white Honda Accord bearing California license plate number 7PYM292, approached BPA Mendivil at the primary inspection area with one visible occupant. BPA Mendivil asked the driver, later identified as PEREZ, for his immigration status. PEREZ stated that he was a US Citizen. BPA Mendivil asked PEREZ where he was coming from. PEREZ stated he had missed his turn and wanted to go to "Hollenbeck." Hollenbeck is an area located on Honey Springs and SR 94, and is mainly known by locals for its hiking trails. BPA Mendivil then asked PEREZ if he was from around the area. PEREZ claimed to be from San Fernando Valley near Los Angeles ("LA"), California. PEREZ stated he and a friend are going to "Hollenbeck" to hike. In that moment, PEREZ pointed to the dark grey Audi driving behind him and stated, "that guy is with me." PEREZ was visibly nervous and when asked for his identification, presented it with a shaky hand. Due to PEREZ' implausible travel itinerary and nervous behavior, he was referred to the secondary inspection area for further questioning. In my experience and training, it is not common for someone to travel several hours away to hike a not well-known trail that is mainly hiked by those who live locally. Furthermore, this is a common excuse given by those who have been arrested for alien smuggling.

15. As BPA Mendivil referred PEREZ to the secondary inspection area, the dark grey Audi bearing Nevada License plate J415A approached the primary inspection area. The driver, TIPAN, stated he was a US Citizen with an unsteady voice. TIPAN stated he was coming from "Vegas" and was meeting his friend to hike. TIPAN then pointed to the white Honda that had been referred to the secondary inspection area moments ago, driven by PEREZ. At this point agents were highly suspicious of PEREZ and TIPAN's implausible travel itinerary, nervous behavior when questioned about their purpose for being in the area, and suspected they were in the area to smuggle humans. TIPAN was referred to the secondary inspection area for further questioning. For further details, refer to BPA Mendivil's Report of Investigation contained within Border Patrol case BRF2010000245.

6

16. In secondary, BPA Hurlbut questioned PEREZ regarding his citizenship and travel itinerary. After PEREZ explained he travelled from Vegas to Jamul, CA, to hike Hollenbeck Canyon, BPA Hurlbut observed PEREZ was not wearing suitable clothing for hiking, specifically slim blue jeans and street shoes which would make hiking in the area very uncomfortable. These observations raised BPA Hurlbut's suspicion. BPA Hurlbut noticed PEREZ' GPS on his cellular phone was on and asked PEREZ' consent to see the phone in order to confirm or deny his suspicions. PEREZ stated "OK, look."

17. BPA Hurlbut observed that the GPS route of travel was marked as continuing on SR 94 toward San Diego, passing Hollenbeck Canyon. At this time BPA Hurlbut suspected PEREZ was not being truthful and believed PEREZ was in the area to smuggle humans. In the agent's experience, it is common for those who are involved in alien smuggling to provide a rehearsed reason as to why they travelled long distances to be in the area. However, when asked about details of the purpose of travel, the alibi begins to fall apart and is illogical. BPA Hurlbut confronted PEREZ with his suspicion of him being in the area to smuggle aliens. PEREZ then admitted to BPA Hurlbut that he and his friend in the Audi, TIPAN, were going to pick up "illegal aliens," and drive them to LA. PEREZ stated TIPAN was going to scout for him. BPA Hurlbut placed PEREZ and TIPAN under arrest for 8 USC 1324 Alien Smuggling (Conspiracy). For further details, refer to BPA Hurlbut's Report of Investigation contained within Border Patrol case BRF2010000245.

18. During a search of the vehicles used by PEREZ and TIPAN, agents searched the Honda Accord and Audi. Inside the glove box of the Honda Accord, BPA Hurlbut found a black Glock replica BB gun that resembled a Glock pistol. Further, BPA Hurlbut found a small working handheld radio in the center console. BPA Hurlbut found the same model handheld radio in the Audi under the driver seat too. Agents also recovered the **Target Devices** from the Audi driven by TIPAN.

19. PEREZ was compliant and provided consent to search his cellular phone, but invoked his right to remain silent after his warning under *Miranda*.

20. A search of PEREZ' cellular phone revealed pictures of a text message and

7

text message string with TIPAN conspiring to smuggle aliens. Further, TIPAN explained to PEREZ what all co-conspirators of the alien smuggling event would get paid. It appeared TIPAN had successfully smuggled aliens in the past and was recruiting PEREZ as a driver.

21. TIPAN did not give consent to search the **Target Devices** and invoked his right to remain silent.

22. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this Affidavit, I believe that information relevant to the alien smuggling activities of TIPAN and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

23. In light of the above facts, and my own experience and training, there is probable cause to believe that TIPAN was using the **Target Devices** to communicate with others to further the alien smuggling activities of TIPAN and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

24. In my training and experience, alien smugglers may be involved in the planning and coordination of an alien smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the success of their venture. Accordingly, I request permission to search the **Target Devices** for data beginning 30 days prior to October 27, 2019, which was the day following Defendant's arrest.

### METHODOLOGY

25. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is

subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

//

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

28. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

29. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 8, United States Code, Section 1324.

30. Because the **Target Devices** were seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from 30 days prior to October 27, 2019, which was the day following Defendant's arrest.

31. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Border Patrol Agent-Intel David Trebbi
US Border Patrol

Subscribed and sworn to before me this 13th day of November, 2019.

Hon. Andrew G. Schopler
United States Magistrate Judge

10